One of the failings in the briefings that were submitted by the appellant is the failure to emphasize that there was actually an instructional error concerning the offenses. The instructions were found at... Is this an argument that appears in the brief? Well, it does. It's touched upon, but it's not as succinct and direct as I would like to make it this morning, which is at Excerpts of Record 155. The court gave the so-called negligent standard or reasonable manned standard instruction for what constitutes a threat, which would be in contravention to the black decision of the Supreme Court and this circuit's decision in Castle because... I'm looking at the issues presented. I don't see anything that resembles this. The case of Castle is cited with... I didn't ask whether a case was cited. I'm looking at the issues presented in the opening brief, and I don't see anything that resembles what you're telling me about. Well, we did. We did argue that there was a failure to establish the subjective intent on the part of Mr. Stewart to convey... You argued whether the evidence was sufficient. Insufficient. That's correct. Right. And it was... What does that have to do with the instructions? Well, because the instructions in conjunction with the... What we consider to be the erroneous admission of the decorative sword and the Brock Terrian website suggest that the jury's burden in determination of the elements was lessened because they were given this instruction that they only had to consider what a reasonable man would consider to be a threat rather than... Was there an instruction... Was an objection to the instruction voiced to the district court? No, but... So we have no objection to the district court and nothing in the opening brief that raises the objection. And now you're offering this up as your prime argument? No, it's not the prime argument, but it's an argument that dovetails into the cases that were cited in the brief and were also made in the course of stating that there was insufficient evidence in this case because, as we stated in the brief in a number of places and also in the reply, that the government failed to show that Mr. Stewart intended to make an effect... What were they supposed to think when they heard what was said? Well, they were... Obviously, the words were offensive, and obviously, the judges would be troubled by them. There's no question of that. But the problem is, is that while the judges... Would they think they were at risk of harm? The judges did testify that they felt that they were placed at risk by the words that were found in the pleadings that were submitted by Mr. Stewart. So what should we use when we take a look at what was said and what the judges said they felt? What test should we use? Well, the test that should be used would be to determine what Mr. Stewart's intent was when he... We'll never know that. Don't we have to determine what a listener would reasonably assume from what he said rather than from what he solidly intended? Not under the Castle case that we cite in the brief along with Virginia v. Black. Because in Castle, they indicated they construed Black's definition of true threat to embrace not only the requirement that the communication itself was intentional... In other words, he intended to make it in the pleading, but also that the requirement that he intended for his language to threaten the victims. Now, the victim certainly... The intent of the speaker allows the court's... The victim judge's testimony to be relevant because it sheds light upon what the intent of the speaker would be. And so to that extent, what the judges testified to was relevant. But that didn't... Do you mean the agents? Beg your pardon? What the agents testified to? No, what Mr. Stewart wrote in the pleadings. What Mr. Stewart wrote in the pleadings, right. Could I get you back for a moment? We'll finish what you're saying, but I need to ask you a question about the standard of review here. Okay. Getting back, since I've interrupted you now, sorry. Getting back to the standard of review, let's assume that we're not looking at an instructional error. Because I didn't see that in your briefs. I didn't look at a jury instruction because it wasn't argued in the briefs. What was argued was sufficiency of the evidence. And so normally we look at that under Jackson v. Virginia for could any rational juror have found these elements. So given the language in the pleading and what the agents discussed based on their interviews with Mr. Stewart, how could we say that no reasonable juror could determine that he subjectively intended a threat? Or is that not the right standard of review? No, that is the right standard. But the argument would be that the interview was conducted after the briefing was already submitted by Mr. Stewart. And so at that point, the agents were simply gathering evidence for future litigation. There was no position taken by the government that somehow these statements themselves were considered subsequent bad acts. Rather, they were claiming that it was part of the res geste for the offense. But the jury was tasked with looking at the pleading that was submitted on October the 2nd, 2006, for counts one and two, and October the 23rd for counts three and four, to determine whether within those two submissions there were threats as defined by Virginia v. Black and as construed by Castle and further developed by Castle in this circuit as to whether they were true threats. And the argument that we're making is that they were not, because under Bagdasarian, what Mr. Stewart wrote were simply predictions which, in the context of his strong religious beliefs, were conditional upon future events. More of a strong religious belief, wasn't it? Very strong religious belief. No, he believed he was God. He tried to explain when he testified that there was a difference between what a spiritual God is and what God is. He didn't believe he was God. There were statements made within the briefing itself that stated that. That's true. He believed he was God, and he was predicting what the outcome would be. Well, he, yes, he was predicting, exactly. And that's why we maintain that the statements that were made in the pleadings were not true threats under Virginia v. Black. But would a person hearing them reasonably be put in fear? They, it depends. It depends on. But in this case, were they? Their testimony was that they were. Their testimony was that they were. But, and that goes only so far in terms of the determination as to whether they, the threats were intended by Mr. Stewart to be threats. Because when he testified, he indicated that that was not his intention. Yeah, but he also said, the threats said, for he who is God is me, the one true judge of all. He suggested he's the vehicle. And he may say later, well, I didn't really mean to leave that impression. But I'm not sure how a jury can't look at that and say, gee, he's not just saying gloom and doom is going to come to you. He's suggesting that he's going to be the device through whom the gloom is delivered. He says, I kill no one but the angel of death, which is a part of me that I contain as merciless. My will is always life, but death is for those who defile or deny my word. And then he goes on to say, people kill themselves when they don't listen to God. Magistrate, Judge Oswald Parada, don't kill yourself or Judge Matz. So it sounds like, just stripped of the language that he believed he was God, he's saying, bad things happen to people who don't do what I want, in essence, is what he's saying. And it seems like a rational juror could believe that that was a threat. Except that when Stewart testified, he did explain the context within which he made the statements. So the jury doesn't have to accept his explanation. Sure, they don't. But, again, I mean, you're a parent. I've got my kids that told me several times, I didn't mean to do it. But that didn't mean I had to accept their proposition. And so the jury doesn't have to accept this one either. Absolutely. But the problem with the way in which the case was presented was that there was an assumption that, as the Court's been mentioning this morning, that it is an objective analysis as to whether the words themselves would offend a reasonable person or a reasonable person would construe them to be threats to the alleged victims, when, in fact, there's actually two subjective intent elements in this statute. The first one deals with the threat itself. And the second deals with the intent to impede or interfere. So, for example, there can be many instances where somebody might make a threat not to assault or murder, which is what's required in the statute here, but rather to defame or to somehow compromise the target of the threat with the intent to impede or interfere, as it were. And in this particular instance, what the problem was is that the jury thought that once the judges testified as reasonable persons, because certainly anybody would consider the judges to be reasonable, that if they felt that what was said were threats, that that was enough to carry the day for the jury. Your argument has to be, if I'm understanding you right, that no reasonable juror could have heard that language from his pleadings and believed he intended to threaten the judges. I think it's a stretch because of the distinction between a spiritual God and a God that Mr. Stewart said is in all men. And so what was written in there does not appear to be a direct threat, like some of the other cases that have been cited by both sides. And so I think the question is,  And, in fact, I think it's a good question. I mean, it does ask for action. I mean, in the first instance, he wants the case transferred and suggests that the case isn't transferred, something bad's going to happen. But why ‑‑ I don't know how that can't be viewed as a threat reasonably by a jury on either an objective or subjective basis. All right. All right. Well, I would like to possibly reserve a couple minutes at the end, but I would like to just cover the mandatory medical condition for a moment. As far as the mandatory medical condition is concerned, it appears that under the Williams decision, and the facts in Williams are very close to the facts in this case, that the district court had to contain explicit findings based on an updated and medically informed record, which identified the specific medications that needed to be taken, their dosage and duration. That was not done in this case. The only timely report that was submitted by any expert was that of Dr. St. Martin, which was in November of 2010, just a couple of months before Mr. Stewart was sentenced. All the other reports that were relied upon in the court's order justifying the mandatory medical condition were at least two years or older, and they had been prepared because of the court's concern for the defendant's competency. And the competency issue was the issue that was addressed at the time of Mr. Stewart's detention and was also the issue that the district court judge was grappling with at the time Stewart was to be tried for the offenses. Two of the three reports that were more than two years or older came from government sources. One was Metropolitan Detention Center of L.A., Dr. Sinofsky's group. The other was from FMC Springfield, also a government psychiatrist. Williams says it has to be independent. Those were not independent sources, so the only thing left was Dr. Fairstein's report, which was the earliest report in 2006, which dealt with the question of his competency at that time during the detention hearing because the magistrate had ordered that Dr. Fairstein evaluate the defendant. So the only thing that the court had to work with was the evaluation of Dr. St. Martin, which was rendered in November 2010, which said that Mr. Stewart was not dangerous, and therefore there was no further justification for ordering a mandatory medical condition. The issue of competency was no longer before the court because he had already been tried. I would respectfully ask to reserve a little bit of time at the end. Thank you. We'll hear from the government. Good morning. May it please the Court. Robert Huey on behalf of the United States. I'd like to start by addressing the medication condition issue. At the time of sentencing, Judge Hogan had an extensive medical record as a result of years of litigating over Mr. Stewart's competence, and we're looking at five reports in particular, and despite some small differences, those reports on the main points agree with each other, and they agree that Mr. Stewart had some sort of delusional psychosis. They agree that that psychosis played some role in his actions at the time the offense was committed. They agree that medication would benefit him, and they agree that he refuses to take medication because, in the words of the defense expert, people who have delusional psychoses don't understand they have delusional psychoses. So on all these salient points, the five reports in the record, including the report of the expert Mr. Stewart hired for purposes of sentencing, were all in agreement. Now, opposing counsel says we should ignore the reports that were done by doctors that were hired by the government or that worked for the government. Is that correct? I don't believe so, Your Honor. Williams doesn't require the court to ignore medical evidence just because it was prepared by the Bureau of Prisons. The judge in this case looked at everything as he should have, and the defense was given the opportunity to submit additional medical evidence. It rested on the report of Dr. St. Martin. Do we concern ourselves with the broadness of the requirement? He must take, according to this record, any medication prescribed by whoever may prescribe it in the future. Isn't that a pretty broad statement of ---- Well, it is broad. Let's assume I misstated it. But in essence, isn't that what the requirement is? It is broad, Your Honor. Williams doesn't require the judge to opine on what particular medication ought to be prescribed or in what dosage. And the context of the judge's ruling in this case was in light of past orders in which he had considered, heard evidence on specific dosages and types of drugs. In this case, he left that, the specific types of drugs, to Mr. Stewart's treating physician. And there was no objection to that aspect of the sentence. The objection was that there ought not to be any medical condition at all. So we don't think there was any requirement. When we review it, don't we have to review it? Don't we have to consider whether it's broad or whether it's specific enough, or do we? Well, certainly, Your Honor, I don't read Williams as calling for the judge to opine on a specific prescription or a dosage for the defendant. Williams simply requires that the judge make the findings that are required under 3583. In this case, the judge made those findings. Can the Court hand over, in effect, the authority to define the specific requirements of probation, of supervised release to somebody else? I mean, we have cases where supervised release used to give discretion to the probation officer to decide a number of tests and so forth, and that's been largely curtailed. Here, it really does seem like a pretty open check or like a blank prescription pad. Whatever the psychiatrist or psychologist prescribes, he's compelled to take. And is there any authority that upholds a condition of supervised release as broad as that? Your Honor, I'm not aware of authority that specifically addresses that issue. But certainly, there is a tension. On one hand, the judge is not a physician, and so the decisions about what precise treatment and care Mr. Stewart should receive are best left to the physicians. On the other hand, of course, that leaves the defendant essentially helpless. Whatever is prescribed, he's got no recourse. He has to accept, at least if the court's involved, the defendant can make an argument to the court, that's not appropriate for my condition. Well, the defendant certainly can come back to the judge and move to alter the conditions of supervision. Meantime, he would be in breach of his probation because if he hadn't taken it, whatever it is, according to this order, he'd be in breach, wouldn't he? Well, the advisable, yes, Your Honor, the advisable course would be to take the medication that you're prescribed and then go back to court and say, I would prefer a different medication. So with regard to the adequacy of the findings, the judge made the findings that are required under Williams. If you look at what he said orally at the time of sentencing, the language of the judgment, and the set of detailed written findings that were entered the day after the judgment. So taken as a whole, those findings meet the requirements of Williams and meet the requirements of 3583. So the other defects, as I understand it, that opposing counsel was indicating in the reports were that they lacked specific information about dosages and duration and that they were untimely and prepared for a different purpose. Is that a problem in the court relying on reports of those defects? I don't think it's a problem, Your Honor. In this case, there was also a report from Mr. Stewart's expert that under the defense view is timely because it was prepared a month or two before sentencing. And Dr. St. Martin says Mr. Stewart's diagnosis is unchanged. Everything that Dr. St. Martin said the first time around, that he could benefit from medication. He refuses to take medication. He's got a delusional psychosis. Dr. St. Martin is saying that all still applies. Now, Dr. St. Martin also says he shouldn't be required to take medication as a condition of supervision. He says he's no danger to himself or others. I guess it rewards to that effect. He does say that, but in opining about danger, what he says is, setting aside what happened in this case, Mr. Stewart has no history of threats. But, of course, the reason we're here at sentencing is because of what happened in this case. So respectfully, that methodology is not an appropriate one to bring to sentencing. The judge is entitled to look at what happened in this case, and that's the very point of sentencing. And so on this record, this medically informed record, Judge Hogan was entitled to conclude that the interests of protecting the public and of providing Mr. Stewart with the needed medical treatment would be best served by imposing a medication condition. So that what happens here doesn't happen again to the same judges, to somebody else. Whether or not Mr. Stewart is going to go out and actively hurt somebody, it still remains the case that all the conditions are ripe for him making the exact same threats. Whether he would describe them as threats or not, they're certainly interpreted by reasonable individuals as threats and taken very seriously. And Judge Hogan is trying to prevent that from happening again. Unless the Court has further questions, I'd submit. Thank you. I don't doubt that Judge Hogan had very good intentions when he ordered that special condition. The problem is that that's not sufficient under Williams and Williams' interpretation of Harper and Sell, because Harper has gone so far as to say that in order to treat somebody with antipsychotic medications, you have to show that the person is either dangerous to himself or others. I don't think that that was shown in the expert submissions. I think he's saying that the danger here is the threat, because that's the criminal conduct at issue, whereas the report seemed to be indicating danger of violence to himself or others. Well, but if that's the case, then all the Court had before it that it should have considered was Dr. St. Martin's November 2010 report, because the other three submissions from government sources or from other sources were outdated, and they were medical findings that were used to determine competence to stand trial, which is what Williams said was the distinguishing factor in why that was not sufficient. They should have been addressing any risk to the public, and the only report that did that was Dr. St. Martin's, and he said that there was no risk, or at least there was no statement that there was a risk. He says there's no risk. He also seems to say his condition hasn't changed, which means the condition was not unlike the condition at the time he committed the acts that the jury ultimately determined constituted a criminal offense. Right. But then the Court has to consider when it's not dealing with a cop, restoring somebody to competence, whether or not the Court is empowered to medicate somebody in order to prevent them from future commissions of crime similar to the offense of conviction. The offense is one that seems to inherently pose some risk because it would at least communicate danger or cause others to be in fear. Isn't that a justification for saying, okay, it may be one thing to keep somebody from burglarizing again or something, but another to say stop making threats to other people, and the only way we can stop you from communicating in a way that are perceived as threats is medication. I wouldn't call it a justification. I would call it a consideration, because the Court had to determine the use of the imposition of the condition that it should not involve a greater deprivation of liberty than is reasonably necessary. That was the problem. The Court didn't do that balancing. The Court had any number. Remember, the burden for this particular condition is on the government. It's not on the defense. The government is the only one that's actually proffering evidence at the time of sentencing concerning the usefulness of this condition. The Court is not discussing the concerns that Williams articulated about what psychotropic medications do in terms of tinkering with the mental processes and affecting a person's self-autonomy, discussing about particular drugs and how they can have some serious side effects. They talked about something called tardive dyskinesia, which occurs in 15 to 20 percent of all patients. A lot of that had to be discussed at the time of sentencing. It was the government's burden to justify what it wanted the Court to do. The Court didn't do that. And under Harper and also under the cases from the Supreme Court, the fact that the earlier reports dealt with competency, now we're talking about a sentencing condition, that these are not interchangeable inquiries. And that's why the Court, I think, abused its discretion in imposing that particular special condition. I wanted to go back... What is the specific question before us on our issue that we must resolve? Would be whether or not that special condition should remain in effect. Yeah, but it turns on something. Whether it should remain in effect turns on some fact. What does it turn on? Would be the abuse of discretion in terms of the record that was in place to justify it at the time of sentencing. We also brought up another issue concerning timing as to when the Court submitted written findings. Is it your view that there's nothing medically wrong with your client? Well... And that any judge who says there is has abused the discretion? Yes, because Williams requires that the judge do more before they impose a special condition. A court can't just say, you know, I perceive that you have a problem based upon your history. In that history... Well, not your history. The facts that now bring you before me. Well, yes, but you see, this is a time of sentencing, Your Honor. So at the time, that's the relevant time period, is the time of sentencing. Not an earlier time when Mr. Stewart may have written some offending statements and documents filed with the Court, which was four years earlier. There was a lot of history in this case by the time he got to sentencing. So the Court has to... He got a medical statement saying that the condition now is the same as it was. But the cases talk about diagnoses of persons who suffer from delusional condition, you know, delusion and that sort of thing, where experts have said in many instances there are no psychotropic medications that really have any effect on that. What should our ruling be? The ruling should be... The Court abuses discretion in suggesting any need for medication. Well, at the bare minimum, the case should be remanded to the Court to reconsider de novo whether there is a justification for a special mandatory medical condition. Since the record at the time of sentencing was insufficient. Now, whether the Court can still do that, whether he is still on a supervised release term at this point is an open question, too, because as the Court may recall, about a year of the time spent prior to trial was in a civil commitment, which we maintain should not be counted toward the term of imprisonment for terms of calculating when the supervised release term should begin. And I think that's a different argument you made in your brief, and that gets pretty far afield from the model. I know, but I had to get it out at some point. There are a lot of issues here, and I apologize. We've reviewed the brief. We appreciate there are issues that you didn't have a chance to talk about. They're not waived. We will give full consideration to them. We appreciate it. We thank both counsel for the argument. The case just argued is submitted.
judges: Farris, Clifton, Ikuta